UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

SPEECH FIRST, INC,

Plaintiff,

v.

PAMELA WHITTEN,
LAMAR HYLTON,
KATHY ADAMS RIESTER,
CEDRIC HARRIS,
JASON SPRATT,
HEATHER BRAKE,
KATHERINE BETTS,
QUINN BUCKNER,
CINDY LUCCHESE,
CATHY LANGHAM,
JEREMY A. MORRIS,
J. TIMOTHY MORRIS,
KYLE S. SEIBERT,
DONNA B. SPEARS,
ISAAC TORRES,
VIVIAN WINSTON,

Defendants.

No. 1:24-cv-00898-JPH-MG

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**

Speech First, an organization that seeks to protect free speech rights on college campuses, brought this case against Indiana University officials alleging that IU's "bias incident" policy violates the First and Fourteenth Amendments. Dkt. 1. Although Speech First has filed a motion for a preliminary injunction preventing Defendants from enforcing IU's policy, dkt. 9, the parties agree that *Speech First, Inc. v. Killeen*, 968 F.3d 628 (7th Cir. 2020), requires the Court to deny Speech First's motion. Dkt. 10 at 5–6; dkt. 30 at 6–7, 23; dkt. 31 at 2 (Speech First acknowledging that "it must lose under *Killeen*").

For the reasons below, the motion for preliminary injunction is **DENIED** under *Killeen* and this case is **STAYED** pending Speech First's anticipated appeal. Dkt. [9].

## I. Facts & Background

The parties have filed affidavits and other documentary evidence, the relevant parts of which are uncontested. *See* dkt. 1 (verified complaint); dkt. 9; dkt. 25. Neither party requested an evidentiary hearing, *see* dkt. 21, so these facts are based on that designated evidence.

### A. Indiana University's Bias Response & Education Initiative

Indiana University is an institution of higher education that "encourages the free and civil exchange of ideas." Dkt. 9-12 at 5. In order to "foster[ ] campus communities where all are welcomed, valued, respected, and belong," IU has created Bias Response & Education, an initiative that includes a bias incident process. *Id.* at 4. Through this process, IU invites reports of "bias incidents," which include "any conduct, speech, or expression, motivated in whole or in part by bias or prejudice meant to intimidate, demean, mock, degrade, marginalize, or threaten individuals or groups based on that individual or group's actual or perceived identities." *Id.* at 2. IU has encouraged reports on several of its websites, *see id.*; dkt. 9-23; dkt. 9-26, and on social media, *see* dkt. 9-22.

IU's Bias Response & Education website explains that it "privately reviews all submitted bias incident reports" and responds to them:

| The university's response includes: | Possible outcomes include: |
| --- | --- |
| • Conversation(s) centered around the incident and impacted person(s)<br>• Refer reporter to appropriate campus offices that can effectively respond<br>• Refer impacted to support resources<br>• Incident assessment, response plan<br>• Ongoing support and check-ins | • 1-on-1 ongoing support<br>• Engage person(s) impacting others<br>• Engage leaders to address systemic issues<br>• Mediation and facilitated dialogue |

Dkt. 9-12 at 2–3. The website goes on to explain what Bias Response & Education does and does not do:

| What We Do: | What We Don't Do: |
| --- | --- |
| • Conversation(s) centered around the incident and impacted person(s)<br>• Refer to support services or offices who can appropriately respond<br>• Log all reported incidents and track for trends<br>• Notify campus leaders of ongoing bias incidents and trends<br>• Educate and consult the campus community about bias<br>• Inform the campus community about our work through informational meetings and annual reports | • Take disciplinary action<br>• Conduct formal investigations<br>• Impinge on free speech rights <https://freespeech.iu.edu/> and academic freedom |

The form for reporting incidents of bias adds that the "primary goal is to provide support to the individual or community impacted," though reports are also "evaluated to determine if further investigation is required for potential violations of university policy and/or criminal law." Dkt. 9-14 at 2.

Any student engagement with Bias Response & Education is "entirely voluntary." Dkts. 25-1 at 3; 25-2 at 3. If a student—whether reporting or

alleged to have engaged in reported behavior—"does not want to meet or otherwise engage with Bias Response & Education, the student does not have to, and will not be penalized or sanctioned as a result of that decision." Dkts. 25-1 at 3; 25-2 at 3. Reported students may receive an email asking to schedule a voluntary meeting. Dkts. 25-1 at 10; 25-2 at 10. Many students—"the majority" at the Indianapolis campus and "numerous" at the Bloomington campus—either do not respond or decline a meeting. Dkts. 25-1 at 10; 25-2 at 10. If a student agrees to meet, "Bias Response & Education does not ask or require students to change what they do or say" and "leaves no doubt that [students] are not being charged with any Code violation, nor are the students 'in trouble.'" Dkts. 25-1 at 10; 25-2 at 10.

Regardless of the situation, "Bias Response & Education never makes a 'finding' that a bias-motivated incident has occurred, nor does it have any disciplinary function whatsoever." Dkts. 25-1 at 3; 25-2 at 3. Bias-incident reports are kept in "an internal Bias Response & Education database" and data from them are aggregated—without names or personal identifiers—to track, for example, the volume, categories, and locations of reports. Dkts. 25-1 at 9, 11; 25-2 at 9, 11. Those reports are "kept secure and private" and "are not recorded in students' academic or disciplinary records." Dkts 25-1 at 10–11; 25-2 at 10–11. In short, "Bias Response & Education has no power to sanction, punish, or otherwise discipline any student for any reason." Dkts. 25-1 at 3; 25-2 at 3.

**B. Speech First and its IU Student Members**

Speech First "is a nationwide membership organization of students, alumni, and other concerned citizens" that "seeks to protect the rights of students and others at colleges and universities." Dkt. 1 at 3. Some of its members attend Indiana University, including anonymous students A, B, C, D, and E. *Id.*

Students A, B, C, D, and E are all "politically conservative and hold views that are unpopular, controversial, and in the minority on campus." Dkts. 9-3 at 1; 9-4 at 1; 9-5 at 1; 9-6 at 1; 9-7 at 1. They each "want to speak directly to [their] classmates" and "want to talk frequently and repeatedly" about issues such as gender identity, immigration, affirmative action, and the Israel–Palestine conflict. Dkts. 9-3 at 1–3; 9-4 at 1–2; 9-5 at 1–2; 9-6 at 1–3; 9-7 at 1–3. IU's "bias incidents policy, however, makes [them] reluctant to openly express [their] opinions or have these conversations in the broader University community." Dkts. 9-3 at 3; 9-4 at 3; 9-5 at 3; 9-6 at 3; 9-7 at 3. They therefore "do not fully express" themselves because "others will likely report [them] to University officials for committing a 'bias incident.'" Dkts. 9-3 at 3; 9-4 at 3; 9-5 at 3; 9-6 at 3; 9-7 at 3. Each student is "afraid that the Bias Response Team will keep a record on me, share the allegations with campus leaders and others within the university, call me in for meetings, or refer the allegations to the Office of Student Conduct." Dkts. 9-3 at 3; 9-4 at 3; 9-5 at 3; 9-6 at 3; 9-7 at 3.

Speech First brings a facial challenge against IU's "bias incident" policy, alleging that it should be enjoined in its entirety under the First and Fourteenth Amendments. Dkt. 1. It has filed a motion for a preliminary injunction under Federal Rule of Civil Procedure 65, requesting that the Court "enjoin Defendants from enforcing [IU's bias-incident] policies during this litigation." Dkt. 9. Speech First concedes, however, that the Seventh Circuit's opinion in *Killeen*—which addressed a facial challenge to the University of Illinois's bias-response policies—is "binding" and "requires this Court to deny Speech First's motion for a preliminary injunction." Dkt. 10 at 5; dkt. 31 at 1 ("Speech First agrees that its preliminary-injunction motion must be denied" and "asks this Court to rule promptly so it can appeal.").

**II.**
**Preliminary Injunction Standard**

Injunctive relief under Federal Rule of Civil Procedure 65 is "an exercise of very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021). To obtain such extraordinary relief, the party seeking the preliminary injunction carries the burden of persuasion by a clear showing. *See id.*; *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

Determining whether a plaintiff "is entitled to a preliminary injunction involves a multi-step inquiry." *Int'l Ass'n of Fire Fighters, Local 365 v. City of E. Chicago*, 56 F.4th 437, 446 (7th Cir. 2022). "As a threshold matter, a party seeking a preliminary injunction must demonstrate (1) some likelihood of succeeding on the merits, and (2) that it has no adequate remedy at law and

will suffer irreparable harm if preliminary relief is denied." *Id.* "If these threshold factors are met, the court proceeds to a balancing phase, where it must then consider: (3) the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied; and (4) the public interest, meaning the consequences of granting or denying the injunction to non-parties." *Cassell*, 990 F.3d at 545. This "involves a 'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). "In the final analysis, the district court equitably weighs these factors together, seeking at all times to minimize the costs of being mistaken." *Cassell*, 990 F.3d at 545.

## III.
## Analysis

"To invoke federal jurisdiction, [a plaintiff] must have standing, which is a short-hand term for the right to seek judicial relief for an alleged injury." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017). "A plaintiff bears the burden of showing that she has standing for each form of relief sought," including "injunctive relief." *Id.* "A district court . . . can address a motion for a preliminary injunction without making a conclusive decision about whether it has subject-matter jurisdiction." *Id.* But "issues of subject matter jurisdiction are always on the table in federal courts," including in preliminary-injunction proceedings. *Id.* Accordingly, if a plaintiff lacks standing to seek injunctive

relief, a motion for preliminary injunction should be denied on that basis. *Id.* at 738–39; *Killeen*, 968 F.3d at 638–39, 647.

In *Killeen*, Speech First brought a facial challenge against bias-response policies at the University of Illinois at Urbana–Champaign, arguing that they "impermissibly chill[ed] the speech of student members of its organization." 968 F.3d at 632. Those policies were implemented by a Bias Assessment and Response Team ("BART"), which "collect[ed] and respond[ed] to reports of bias-motivated incidents that occur within the University of Illinois at Urbana–Champaign community." *Id.* BART was housed in the same office that enforced the student code and had a law-enforcement liaison from the University Police Department. *Id.* at 633. It could not, however, "require students to change their behavior and [did] not have authority to issue sanctions." *Id.* And while BART published an "annual report of incidents with all personally identifiable information removed," interactions with students were kept private and did "not appear on students' academic or disciplinary records." *Id.*

The Seventh Circuit affirmed the district court's denial of Speech First's motion for a preliminary injunction, holding that Speech First lacked standing to seek a preliminary injunction. *Id.* at 647. The Seventh Circuit explained that the University of Illinois had "not investigated or punished any of the students who are members of Speech First pursuant to any of the challenged University policies." *Id.* at 639. Nor had Speech First "demonstrated that these policies pose[d] a credible threat of enforcement to any student or whether any

student has faced an objectively reasonable chilling effect on his or her speech." *Id.* That was because Speech First (1) did not contest that its members could not be disciplined under the student code for expressing the views they wished to express; (2) did not identify the statements its student–members wished to make; (3) designated no evidence that any student fears consequences from interacting (or deciding not to interact) with BART, and has therefore self-censored; (4) did not contest that BART lacked disciplinary authority; and (5) did not contradict that BART's "interactions with students are private." *Id.* at 639–42.

Here, the parties agree that the Court must deny Speech First's motion because under *Killeen*, Speech First lacks standing to seek a preliminary injunction. Dkt. 10 at 5–6; dkt. 30 at 6–7, 23; dkt. 31 at 2 (Speech First acknowledging that "it must lose under *Killeen*").

Considering Speech First's concessions and the factual record established by the parties' filings, *Killeen* cannot be meaningfully distinguished. Speech First's student–members at IU have identified the general topics they'd like to speak about and expressed fear "that the Bias Response Team will keep a record on me, share the allegations with campus leaders and others within the university, call me in for meetings, or refer the allegations to the Office of Student Conduct." Dkts. 9-3; 9-4; 9-5; 9-6; 9-7. But Speech First concedes that these affidavits are not enough for standing because, under *Killeen*, Bias Response & Education at IU is "materially similar"

to the University of Illinois's policy and therefore does "not chill speech." Dkt. 31 at 4–5.

Indeed, Speech First admits that Bias Response & Education lacks disciplinary authority and that "[b]ias-motivated speech alone is not a Student Code violation" at IU. *Id.* at 4. It further admits "that students are not punished" for declining to meet with Bias Response & Education. *Id.* And it admits that interactions with Bias Response & Education are anonymized and "not recorded in academic or disciplinary records." *Id.* Speech First also does not contest that many students either decline or do not respond to Bias Response & Education's meeting invitations. *Id.* at 3.

Speech First therefore has not shown that it has standing to seek preliminary injunctive relief under *Killeen*. *See id.* at 647 ("Speech First . . . failed to demonstrate that any of its members face a credible threat of any enforcement on the basis of their speech or that . . . responses to reports of bias-motivated incidents have an objective chilling effect."); *Simic*, 851 F.3d at 738–39. This Court is bound to follow *Killeen*, and therefore must deny Speech First's motion for preliminary injunction.[1] *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004).

---

[1] The Court's analysis of the facts in this order speak only to whether Speech First "has met its burden to demonstrate that any of its members experience an actual, concrete, and particularized injury as a result of [IU]'s policies for the purpose of standing to pursue a preliminary injunction." *Killeen*, 968 F.3d at 643–44.

## IV.
## Conclusion

Under binding Seventh Circuit precedent, Speech First lacks standing to seek preliminary injunctive relief, so its motion for preliminary injunction is **DENIED**. Dkt. [9]; *see Killeen*, 968 F.3d at 638–39, 647.

This case, including briefing on IU's motion to dismiss, dkt. 24, is **STAYED** pending resolution of Speech First's anticipated appeal. Dkt. 31 at 1 ("Speech First asks this Court to rule promptly so it can appeal to a court that has the power to overrule *Killeen*."); *see Killeen*, 968 F.3d at 655 n.7 (concurrence in part noting that "the defendants' obligation to answer or otherwise respond to the complaint" had been stayed during the preliminary-injunction appeal); *Simic*, 851 F.3d at 740. Any party may file a motion to lift the stay for good cause.

**SO ORDERED.**

Date: 8/28/2024

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel